## Case No. 2,570.

### In re CHADWICK.

[1 Lowell, 439; 11 Int. Rev. Rec. 126, 133.][1]

District Court, D. Massachusetts. April, 1870.

INTERNAL REVENUE—ASSESSMENT OF INCOME TAX —EXAMINATION OF TAX-PAYER—PRACTICE—PRODUCTION OF BOOKS—EXTENT OF INQUIRY.

1. Upon an application by an assessor of internal revenue for an attachment for contempt

against a tax-payer, in not producing books and giving evidence concerning his liability to assessment for income, the court has power to issue an order to show cause instead of proceeding ex parte, and the defendant has no ground of complaint if such an order is granted.

2. The court has power to authorize the assessor to amend his application.

3. The books which the assessor has the right to examine are those of the person whose assessment is in question, and not those of third persons who have had dealings with him.

4. A corporation is not bound to produce its books to the assessor on an inquiry into the income of its shareholders.

[Cited in U. S. v. Anon, 21 Fed. 768.]

Petition for an attachment by the assessor of internal revenue for the third collection district of Massachusetts, within which the respondent resides; alleging that the respondent [J. H. Chadwick] was a shareholder in an incorporated company, called the Boston Lead Company, of which he was likewise treasurer and agent, having charge and custody of the books of said company; that the respondent rendered his income return for 1869, and was duly assessed thereon: that the petitioner afterwards issued a summons, of which a copy was annexed to the petition, requiring the respondent to appear before the petitioner at his office and produce the books of the company, and give evidence respecting his own "liability to an income," for the years 1865, 1866, 1867, and 1868. Upon this petition being filed in court, a rule to show cause was issued, and the respondent appeared and moved to dismiss the petition for sundry supposed defects, apparent upon its face. Afterwards the petitioner moved to amend, and the respondent filed an answer insisting on his former objections and on others which affected the merits of the case.

J. C. Ropes, Assist. Dist. Atty., for petitioner.

H. W. Paine and J. Ritchie (B. F. Butler with them), for respondent.

LOWELL, District Judge. The statute of 1866, amending section 14 of that of 1864, is found in 14 Stat. 101, and enacts that if any person shall deliver or disclose to any assessor any list, statement, or return, which in the opinion of the assessor is false or fraudulent, or contains any understatement or undervaluation, it shall be lawful for the assessor to summon such person, his agent, or other person having possession, custody, or care of books of account containing entries relating to the trade or business of such person, or any other person he may deem proper, to appear and produce such books, and answer interrogatories, &c. It then provides for the service of the summons, and that if any person so summoned shall neglect or refuse to obey such summons, or to give testimony or answer interrogatories, the assessor may apply to a judge or commissioner for an attachment against such person as for a contempt, and the judge or commis-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

sioner shall hear the application, and if satisfactory proof be made, shall issue an attachment, &c.

Under this section it is objected that the judge should in all cases proceed to hear the application ex parte, and issue or refuse the attachment, as may appear to be just on such a hearing. But I am of opinion that I have power to pursue the course taken in this case, and issue a rule to show cause. The power to issue the attachment includes a power to notify the respondent to appear and show cause against it, whenever such a course seems most reasonable. It is and always has been the practice in chancery to make such a rule in cases which required it. It is done every day in the circuit court in patent causes, and is a practice most beneficial to the supposed contemners. The respondent has no valid ground of objection that he is permitted to be heard on the application. If he does not care to be heard, he need not appear. Again it is said that no amendment is within the power of the court. The argument, if I understand it, is that this is a quasi criminal proceeding, or at least is of such an anomalous character as not to be within the law and practice of amendments as applied in the federal courts. The act is remedial, not penal. It provides for cases like those which are of constant occurrence in chancery and in bankruptcy. A bankrupt is required to submit to examination before the register, or a witness to testify before an examiner; and if in the course of the examination a question is asked which he is advised he need not answer, and he refuses to reply to it, I know of no effectual remedy for the examining party excepting to move for an attachment. I decide a great many such motions every year; but I never supposed that in doing so I was engaged in trying criminals. This is the only mode by which the assessor can perform a duty which the law casts upon him. The tax-payer has a simple remedy, if he considers his rights are invaded, by refusing to appear, or to answer, as the case may be, and the assessor has no alternative but to omit to do his duty, as he understands it, or to apply for an attachment. No doubt the court has power to punish a wilful neglect or refusal to testify in this as in all other cases, but no judge would ever fine or imprison a person for vindicating his supposed rights, in good faith; and it would be as appropriate to call a motion to attach any witness an indictment, as to give that name to this application. Power seems to me to be given by the statute of jeofails, namely, the thirty-second section of the judiciary act of 1789, as well as by the general authority vested in the courts.

We come now to the merits of the case. It seems that the respondent obeyed the summons of the assessor, so far as to appear at the time and place appointed therein, but that he refused to produce the books of the Boston Lead Company; and the most serious point of contention has been whether the statute requires such production. It seems to me entirely clear that it does not. The subject-matter of inquiry by the assessor, according to the summons, and according to the fact, is the income of the respondent, for one or more years, and the books of a manufacturing corporation of which he happens to be a shareholder are not books relating to his trade or business, and are not alleged to be so in the summons. The application is not based upon his being treasurer of the company, and the question does not concern the amount of his salary; but the broad ground is taken that these books are the defendant's books. The statute appears to be very simple. It authorizes the assessor to examine the tax-payer's books. This is its whole scope and purpose so far as the present case is concerned. To effectuate this object, it adds agents and all other persons having care or custody or even bare possession of the books. This is the whole of the enactment. It is impossible to misunderstand it. No doubt the books of every person with whom the tax-payer deals contain some entries which relate to his business, and if every such person were summoned, it might be within the bounds of possibility to make up his income more or less accurately from a detail of all the bargains which he had made with others. But the law does not contemplate any such absurd mode of proceeding. The trade of each person is to be shown by his own books, and he or his agent, or other person having custody of them, must produce them; but it is not the intention of the law to require A. to produce his own books in order to discover, incidentally, the trade or business of B., C., and D., who may have dealt with him.

It was strongly urged that by the statute of 1867 (14 Stat. 478), the income of every person shall include his share of the gains and profits of all companies, whether incorporated or partnership, and whether the gains are divided or otherwise, excepting of certain institutions and corporations, "whose officers, as required by law, withhold a per centum of the dividends made by such institutions, and pay the same to the officer authorized to receive the same;" and that it may be very difficult for assessors to ascertain the undivided profits of an incorporated company (not being one of those whose officers make returns) unless he can examine their books by virtue of this section, and that this section therefore may be so construed as to effect this object, and enable the assessor to examine the books of such companies, precisely as if they were partnerships. It is not consistent with any sound canon of construction with which I am acquainted, to interpret a law passed in 1866 by reference to one passed in 1867. In 1866, the income of any person included the dividends of all companies of every kind, without exception (13 Stat. 480); so that the

argument must reach to the production of the books of all corporations when the income of any one shareholder is the subject of inquiry, or it is insufficient. Now I agree that in some cases this might be very convenient; but I doubt whether this convenience would make up for the very great inconvenience which the companies and their officers must suffer by having their books liable to be called for and taken and detained whenever the income account of any shareholder is to be made up. The argument from convenience may fairly enough be said to be balanced, but not so the argument from the construction of the statute itself. There is nothing in the statute which makes corporations partnerships or the books of a corporation the books of the individual shareholders. The law at section 14 assumes that a person's income will appear in his books, and although it may be found that by another part of the law some undivided profits not shown by his own books, are made a part of his income, yet this does not alter the law concerning his books, which are to be produced when called for, but only proves that the law may to some extent, and in some cases, fail to furnish full evidence. A person may keep no books, or may fail to make certain entries in them, or may omit, by design or accident, to collect all his dues. In such instances, the books will not fully disclose his taxable income. In the majority of cases, and in the long run, it is probable, the books will show the real state of the tax-payer's affairs; and it is to give the assessor the aid and advantage which the tax-payer himself has, and to verify his lists and statements by the record, that the statute is made.

This being so, it is unnecessary to pass upon the objections taken to the form of the assessor's summons. My impression is that the summons should state, with reasonable certainty, the cause of its being issued; as, that the assessor is dissatisfied with the returns, or the like, and the subject-matter of the injury. It is not like a mere subpoena to an ordinary witness to appear and give evidence in court, because that writ refers to the case pending in court, which enables the witness to ascertain what is required of him. The summons in such a case as this should be sufficiently explicit to enable the person summoned to decide whether he is bound to appear or not. In the present instance it may perhaps be that all defects of form were waived by the respondent's appearing and taking the oath, but the most important defect is one that goes to the essence of the case, and could not be cured, because it involves the very point that I have been considering. It is that the summons does not and cannot state that the books called for are the books of the respondent or of his agent, &c., containing entries concerning his trade or business within the statute. Petition dismissed without costs.